WALTER S. BURRIS, Receiver of Taxes, *v.* TOWER HILL SCHOOL ASSOCIATION, a corporation of the State of Delaware.

(*June* 11, 1935.)

LAYTON, C. J., and RODNEY, J., sitting.

*Harry W. Lunger* for plaintiff.

*Hugh M. Morris* and *Ivan Culbertson* for defendant.

Superior Court for New Castle County, September Term, 1934.

LAYTON, C. J., delivering the opinion of the Court:

The plaintiff as Receiver of Taxes for Wilmington Hundred seeks to recover from the defendant county taxes assessed against property owned by it, together with the statutory penalties for non-payment.

The case is before the Court upon an agreed statement of facts from which it appears that the defendant is a non-profit corporation organized to establish and carry on a school where students may acquire a sound classical, mathematical, technical and general education.

In 1919 the defendant purchased the premises at 2612 West 17th Street, in the City of Wilmington, one city block from the school, to provide a residence for the headmaster of the school, and the property is used for no other purpose. This purchase was made possible by contributions received from persons interested in the school.

The headmaster pays no rent for the property, his use and occupancy thereof being a part of his compensation.

The school is entirely a day school, the presence of the students not being required except during classes and school exercises.

The students, except those who hold scholarships, are required to pay tuition fees, and eighty-five per cent. of the running expenses of the school is derived from these fees. It is not contended by the defendant, however, that the school is a charitable institution.

The defendant has refused to pay county taxes assessed against the property for the years 1926 to 1933, inclusive, contending that it is exempt from taxation under *Section 1098* of the *Revised Code of 1915*.

*Section* 1 of *Article* 8 *of the Constitution* authorizes the Legislature to exempt from taxation such property as will best promote the public welfare, and under this power, there was enacted *Section* 1098 of the *Revised Code* 1915, which reads,

"All real and personal property, not belonging to this State, or the United States, or any County of this State, or any church or religious society, and not held by way of investment, or any college or school and used for educational or school purposes, or any corporation created for charitable purposes and not held by way of investment, except as otherwise provided, shall be liable to taxation and assessment for public purposes."

The question presented by the statement of facts is whether the property is used for educational or school purposes within the meaning of the statute.

Manifestly it is immaterial how the money was obtained for the purchase of the property, whether by gift or otherwise, and the fact that the property is distant one city block from the school is not of controlling importance.

The factor of the greatest materiality is the character of the use of the property and, with respect to this use, there is no uncertainty, for it is agreed that it is used as a place of residence for the headmaster and his family and for no other purpose.

Notwithstanding the admitted facts that the school is a day school, and that the property is used solely as a residence for the headmaster, the defendant contends that the property is used for educational or school purposes, and cites *State v. Ross,* 24 *N. J. Law* 497; *In re Syracuse University,* 124 *Misc.* 788, 209 *N. Y. S.* 329; *Id.,* 214 *App. Div.* 375, 212 *N. Y. S.* 253; *Kenyon College v. Schnebly,* 31 *Ohio Cir. Ct. R.* 150; *State v. Carleton College,* 154 *Minn.* 280, 191 *N. W.* 400; *Red v. Morris,* 72 *Tex.* 554, 10 *S. W.* 681; *Ramsey County v. Macalaster College,* 51 *Minn.* 437, 53 *N. W.* 704, 18 *L. R. A.* 278; *Trustees of Thayer Academy v. Assessors of Town of Braintree,* 232 *Mass.* 402, 122 *N. E.* 410.

These authorities, however, do not support the contention of the defendant. They uphold strongly, on the contrary, the plaintiff's argument. They have to do with colleges, or boarding schools, and the rationale of the decisions is the reasonable necessity for the acquisition and maintenance of presidential and professional residences in close

proximity to the student body for inspirational, supervisional or disciplinary purposes, or as a convenient place for holding meetings and social affairs in connection with the institution, as was the fact in the case of the Syracuse University.

The *Thayer Academy Case*, strongly relied upon by the defendant, does not announce any other or different rule. Apparently, the school was .a boarding school, and there is nothing in the report of the case to suggest that the court was departing from its positon taken in *Emerson v. Trustees of Milton Academy*, 185 *Mass*. 414, 70 *N. E.* 442; *Phillips Academy v. Inhabitants of Andover*, 175 *Mass.* 118, 55 *N. E.* 841, 48 *L. R. A.* 550. See, also, *Harvard College v. Assessors of Cambridge*, 175 *Mass.* 145, 55 *N. E.* 844, 48 *L. R. A.* 547, and *South Lancaster Academy v. Inhabitants of Town of Lancaster*, 242 *Mass.* 553, 136 *N. E.* 626.

The considerations impelling the courts in the cases cited are entirely absent from the case before the court. Here, the school is a day school. The sole use of the property is as a residence for the headmaster. All of the duties of the headmaster may be performed at the school, and it is not intimated that these duties are not, in fact, performed at the school.

It is true that in the statement of facts it appears that one of the duties of the headmaster is that of accepting or rejecting applicants for admission to the school, but there is nothing to indicate that the residence is used as an office for the headmaster, or as a necessary and convenient place for interviewing prospective students, or for conducting correspondence relating to the school.

From an examination of the authorities cited both by the plaintiff and the defendant the rule is deduced, as succinctly stated in *State v. Waggoner*, 162 *Tenn.* 172, 35 *S. W.* (2d) 389, that where the dominant consideration in

acquiring a residence for a school employee is to promote the efficient administration of the institution rather than to furnish a habitation for the employee, the residence is considered as being used for educational purposes. See *Knox College v. Board of Review*, 308 *Ill.* 160, 139 *N. E.* 56, 35 *A. L. R.* 1041; *Watson v. Cowles,* 61 *Neb.* 216, 85 *N. W.* 35; *Yale University v. Town of New Haven*, 71 *Conn.* 316, 42 *A.* 87, 43 *L. R. A.* 490; *Northampton County v. Lafayette College,* 128 *Pa.* 132, 18 *A.* 516.

There seems to be no reasonable necessity to maintain a residence for the headmaster in proximity to the school for the promotion of discipline, or for the maintenance of that free communication and association between the headmaster and the student body which generally is considered necessary in universities, colleges and boarding schools.

It is not shown that the interest of school is furthered in any way by the use of the property. The primary and dominant purpose of the property is for the convenience of the headmaster.

The fact that the headmaster pays no rent and that his use of the property forms a part of his compensation does not, of itself, further any scholastic end. *State v. Waggoner, supra.*

*Rettew v. St. Patrick's Roman Catholic Church,* 4 *Penn.* (20 *Del.*) 593, 58 *A.* 828, was correctly decided upon its facts. There it was admitted that the defendant was a corporation engaged in religious, educational and philanthropic work, and for the accomplishment of its purpose to conduct a free school, combining religious instruction with educational training, it employed teachers particularly identified with the religion taught by it. The teachers were persons who lived according to certain rules and regulations which required them to live together in community life, and not permitting them to board separately in different houses. It was necessary, to secure the services of the

teachers and for the accomplishment of the school purposes, to acquire a property adjoining the school property as a place of residence for the teachers of the school.

Upon these facts it was held that the property used as a residence was exempt from taxation under *Section 3, Art. 10 of the Constitution* which exempts from taxation real and personal property used for school purposes where the tuition is free.

█ Notwithstanding the rule that statutes exempting from taxation property devoted to educational purposes are in general construed more liberally than other tax exempting statutes, *State v. Carleton College, supra, Yale University v. Town of New Haven, supra,* the conclusion is compelled that the property in question is not used for educational purposes, and, therefore, is not exempt from taxation for public purposes.

The parties will agree upon the aggregate of the taxes for the years 1926 to 1933, inclusive, together with the statutory penalties incurred for non-payment, and judgment will be entered in favor of the plaintiff in that amount.