ELDER, revenue collector, *et al. v.* TRUSTEES OF ATLANTA UNIVERSITY.

No. 14279 October 14, 1942.

718

*J. C. Savage, E. L. Sterne, J. C. Murphy,* and *F. A. Hooper Jr.,* for plaintiffs in error. *Carlton W. Binns,* contra.

GRICE, Justice. ■ The vacant lot sought to be taxed is in close proximity to the main buildings of the college, being separated therefrom by a street. It is used by the students of the college as a field for playing games. It also appears that tract 7 remains vacant, except that throughout the period involved in this suit it was used, and is now being used, by the students of the University as an athletic or playing field. This lot which is owned by petitioner is not improved in any way, or marked off as an athletic field, but is a vacant lot which the students in fact "use to play games on." Petitioner does not maintain a regular athletic program, and does not engage in intercollegiate athletics, but has

agreed to permit the students of Clark College to use this lot as their regular football practice field, starting in the fall of 1942. The entire block in which tract 7 is located fronts 270 feet on Beckwith Street by 273.5 feet on Lawshe Street, by 270 feet on Parsons Street, by 271 feet on Fickens Street, and tract 7 comprises the entire block, excepting a lot at the southwest corner of Fickens and Beckwith Streets fronting 50 feet on Beckwith Street, by 136 feet on Fickens Street. Tract 7 is not large enough for a regular football field or for a regular baseball diamond, and is not laid off as an athletic field of any sort, but is vacant and is in fact used by students "to play games on."

The decision in *Trustees of the Academy of Richmond County* v. *Bohler,* 80 *Ga.* 159 (7 S. E. 633), dealt with a provision of law that exempted "all institutions of purely public charity," under the paragraph of the constitution that permits the exemption of all buildings erected for and used as a college. It was said: "In the case of a poor-house, the realty might embrace, besides the land covered with the necessary buildings, grounds for recreation, exercise, for pasture of the animals, and even a farm for the inmates to cultivate. The establishment, as a whole, might embrace all these, with articles of personalty to any needful extent for supplying the inmates with all the comforts of life, and keeping them in a healthy, virtuous, cheerful and contented state of existence." It is not disputed that the buildings erected and used as a college are exempt, together with the land on which they are located; and this court has ruled that the exemption embraces the land adjacent thereto necessary for their proper use, occupancy, and enjoyment. *Mayor &c. of Gainesville* v. *Brenau College,* 150 *Ga.* 156 (103 S. E. 164). See *Baggett* v. *Georgia Conference Association of Seventh Day Adventists,* 157 *Ga.* 488 (121 S. E. 838), a decision by four Justices. The record presents the question whether a tract used as an athletic or playing field by students of a college, the buildings and grounds of which are exempt from taxation, shares that exemption. It is a matter of common knowledge that every university, college, and high school in this State affords recreation grounds for its students, most of them having physical directors. Outdoor athletic games are encouraged. They can not be played without having fields on which to play. Physical culture is not only recognized as important, but it has a part in most curricula. A field

of this kind is and should be recognized as a part of the college.

While the exact question was not the same as here presented, the language used in People ex rel. Board of Trustees of Mount Pleasant Academy v. Mezger, 98 App. Div. 237 (90 N. Y. Supp. 488), is apropos. It was observed: "Recreation grounds are common to almost every large school in these days when the old saw, 'All work and no play makes Jack a dull boy,' is held hygienically sound. It may be assumed that the use of real property for the cultivation of athletics should be deemed an educational purpose under the tax law." See Wheaton College v. Town of Norton, 232 Mass. 141 (122 N. E. 280 (6)). The facts that there is not laid off a regular athletic field, and that there is a regular athletic field on an adjacent tract, do not change the character of this property, under the description thereof, and its uses as shown in the agreed statement of facts. The vacant lot here involved was, for reasons indicated above, properly held exempt from taxation.

■ None of the cases decided by this court, which called for construction and application of our laws exempting property from taxation, involved dwelling-houses owned by the educational institution and occupied by the teachers. Similar questions under varying conditions have arisen in other States, but in each instance the constitution and statutes of the particular State governed; and hence the conclusion reached depended not upon the application of general principles. In some States, buildings such as those dealt with here have been held exempt; in others a contrary conclusion has been reached. When the latter line of decisions is examined, however, it will be seen that there is little, if any, supporting authority for the proposition that these dwellings, in the light of what appears in the agreed statement of facts, are not exempt as "buildings erected for and used as a college." For instance, the case of President &c. of Williams College v. Assessors of Williamstown, 167 Mass. 505 (46 N. E. 394), presented a situation different from that here involved, as a mere statement of what was there ruled will show, to wit: "Dwelling-houses owned by a college, when occupied by officers of the college, who pay rent for them and occupy them for strictly private purposes, and exercise exclusive control over them, are not within Pub. St. c. 11, § 5, cl. 3 (amended by St. 1889, c. 465), exempting from taxation real estate of a college when occupied by it or its officers for the pur-

poses for which it was incorporated." In Knox College v. Board of Review of Knox County, 308 Ill. 160 (139 N. E. 56), the ruling was that "The home of the president of a college located 11 blocks from the college campus, and not so closely connected with the work of the college as to distinguish it from any other home, although owned by the college and furnished to the president as part of his compensation, is subject to taxation." But in the opinion, after observing that in these tax-exempt cases the conclusion is necessarily governed by the specific facts in the individual case, the decision seems to have been placed on the fact that the home was eleven blocks away from the college campus, and that "the president's house is primarily a home, without any condition for educational purposes or work being required to be performed there;" which clearly distinguishes it from the instant case. The Tennessee constitution exempts from taxation property "held and used for purposes purely religious, charitable, scientific, literary, or educational." In State v. Waggoner, 162 Tenn. 172 (35 S. W. 2d, 389), it was held that the residence of the business manager of the school for profit, furnished to him rent free, which did not contribute to his efficiency as manager, his work being done in the campus building office, was not tax exempt as used for "educational purposes." The case before us is not of an institution for profit, and furnishes other distinguishing features. In Burris v. Tower Hill School Assn., 36 Del. 577 (179 Atl. 397), in ruling that "Property purchased by school association with contributions, located one block from school which was a day school charging students tuition, and used as a residence for headmaster who paid no rent but whose use of property was part of his compensation," was "not exempt from taxation as used for 'educational or school purposes,'" the count nevertheless laid down the rule that where the dominant consideration in acquiring the residence for the school employee is to promote efficient administration of the institution, rather than to furnish a habitation for the employee, the residence is considered as used for educational purposes, and is exempt from taxation. It was stated that it was agreed that the property was used as a place of residence for the headmaster and his family, and for no other purpose; and the opinion recognized the rule that exempts from taxation homes of teachers where there is a reasonable necessity for the acquisition and maintenance of presidential

and professional residences in close proximity to the student body for inspirational, supervisional, or disciplinary purposes, or as a convenient place for holding meetings and social affairs in connection with the institution. In St. John Evangelical Lutheran Congregation *v.* Board of Appeals of Cook County, 357 Ill. 69 (191 N. E. 282), it was held that a residence owned by a church and occupied rent free by a teacher at a parochial school operated in connection with the church, and sometimes used for tutoring backward pupils enrolled in the school, was not exempt from taxation under the statute, as used exclusively for "school and religious purposes." After referring to the statute relied on, the court in its opinion said: "Under this provision of the statute, property of a religious organization, to be exempt from taxation, must be used exclusively for religious purposes or for school and religious purposes. That the property is used for one of the two purposes is not enough. The use of property for both named purposes does not bring it within the exemption statute, unless such uses are exclusive, since exemption, under the provision invoked, exists only when the property is used exclusively for such purpose." In Northampton County *v.* Lafayette College, 128 Pa. 132 (18 Atl. 516), it was held that houses belonging to the institution, situated in the same inclosure, and in close proximity to the halls and dormitories, and used as residences of teachers and the gardener, are exempt under the act. The houses there dealt with were within the same enclosure as the other college buildings. The court had no occasion to decide whether the dwellings would be exempt if not located within the same enclosure, although in the opinion language is used that lends color to the view that had the buildings been located outside the enclosure they would not be exempt. The six cases just cited are the ones mainly relied on by counsel for the taxing authorities.

To make the question of tax exemption turn on whether or not the building is within the same enclosure as the other buildings does not appear to rest either upon sound reason or common sense. The ruling assumes that the campus is enclosed. As a matter of fact it need not be, and frequently is not. It also assumes that the institution is small enough to be enclosed within one block, which in many cases is contrary to the fact. The issue of tax exemptions should not depend upon whether or not a street sepa-

rates some buildings from others, all a part of one institution and all used for college purposes. There is respectable authority to the effect that this makes no difference. Dickinson College v. Cumberland County, 2 Pa. Dist. 378; State v. Carleton College, 154 Minn. 280 (191 N. W. 400); Yale University v. New Haven, 71 Conn. 316 (42 Atl. 87, 43 L. R. A. 490).

In this State the exemption from taxation, so far as applicable here, only covers "all buildings erected for and used as a college," . . and provided that such property "is not used for purposes of private or corporate profit or income." Code, § 92-201. Under the stipulation contained in the record, these dwellings are not used for private gain or corporate profit. They were erected by the college, to be occupied by the college professors. They are not remote from, but are in close proximity to, the main campus. The stipulation further recites, that it is a part of the duty of the members of the faculty who occupy these residences to exercise supervision and control of the deportment of the students of the college; that this duty was facilitated by placing them near the student dormitories; that there were no facilities for housing the married members of the faculty in the dormitories; that proper housing facilities were not available nearer the campus; and that the residences of the faculty members are often used by the students for conferences with the faculty members. In our opinion, these houses are buildings erected for and used as a college. It may be that a college could operate without a central heating plant, or without dormitories, or without a chapel building; but this would not prove that a central heating plant, or dormitories, or a chapel building, erected for and used by the authorities as a part of the equipment of the institution, was not a part of the college and therefore was subject to taxation. So with these dwelling-houses. Some discretion must be given to the governing authorities of the institution to determine what buildings are necessary or proper to further their educational objectives. The fact is that the dwellings were erected by the college authorities for college purposes, which our law says shall be exempt from taxation.

There is a long line of authorities which, although dealing with different constitutional and statutory provisions, nevertheless in principle support the view that the dwellings here involved are exempt from taxation. Many of them are referred to in the cases

724

hereinbefore cited. See also City of Chicago *v.* University of Chicago, 228 Ill. 605 (81 N. E. 1138); Trustees of Phillips Academy *v.* Inhabitants of Andover, 175 Mass. 118 (55 N. E. 841, 48 L. R. A. 550); Trustees of Griswold College *v.* State, 46 Iowa, 275 (26 Am. R. 138); Emerson *v.* Trustees of Milton Academy, 185 Mass. 414 (70 N. E. 442).

The property here sought to be taxed was exempt under the constitution and laws of this State. See *Board &c.* v. *Hunter,* 190 *Ga.* 767 (10 S. E. 2d, 749).

*Judgment affirmed. All the Justices concur, except Hewlett, J., not participating.*