20087. FLINT ELECTRIC MEMBERSHIP CORPORATION
*v.* ADAMS, Tax Commissioner, *et al.*

*Sam A. Nunn, Dan S. Beeland,* for plaintiff in error.

*D. M. Pollock, Robert D. Tisinger,* for party at interest not party to record.

*H. Thad Crawley, Garland T. Byrd,* contra.

ALMAND, Justice. The judgment under review is one denying a motion for a new trial, in which, among several grounds, error is assigned on the court's directing a verdict in favor of the defendants. Under the view we take of the case it is necessary to determine only whether the court erred in such disposition.

This is an equitable action, wherein Flint Electric Membership Corporation, organized and furnishing electric service to its members in nine counties, under the Electric Membership Corporation Act of 1937, as amended (Ga. L. 1937, p. 644; Code, Ann., Ch. 34A-1), sought to enjoin the tax collector and sheriff of Taylor County from enforcing the collection of tax executions for State and county taxes, issued against the corporation, based upon an assessment against a dwelling house and lot owned by the corporation and occupied by its manager; it being asserted by the corporation that such property was exempt from taxation by the Constitution and laws of Georgia. Constitution of 1945, art. 7, sec. 1, par. 4 (Code, Ann., § 2-5404); Ga. L. 1946, p. 14 (Code, Ann., § 34A-130.1). On the trial of the case, after the plaintiff had introduced evidence supporting the allegations of its petition and the case had been submitted to the jury without the defendant introducing any evidence, the court on motion of the defendant directed a verdict in favor of the defendant and entered a judgment declaring the property described in the petition subject to taxation.

The evidence for the plaintiff shows without dispute that it has approximately 2,000 miles of electric light and power lines in nine counties serving about 12,200 members; its home office is in the City of Reynolds. Its employees consist of 76 persons, including the 24 persons employed in the Reynolds office. In charge of its office and the corporation's activities in the area it serves, is a manager who is required to live in Reynolds. In 1949, due to the fact that there were no suitable houses in

Reynolds where its manager could live, and since there were no motels or hotels in Reynolds where agents of the Federal Government or persons having business with the corporation could stay, the corporation built a six-room dwelling house in Reynolds, two blocks from its office building. One bedroom and a bath are set apart for use by persons who come to Reynolds having official business with the company. This house is rented to the manager who pays the corporation $75 a month rent. It is also used as a meeting place for the directors of the corporation. There is a telephone line from the home office to the dwelling, and the switchboard in the office is so arranged that telephone calls are relayed to the dwelling house when the office is closed. Any trouble on lines or complaints of customers come mostly by telephone. To supervise properly the supplying of electric light and power to its members, it is necessary that the manager reside near the corporation's office, and this requires the manager to be subject to call day and night. The monthly rent goes into the operations expense account of the corporation and it does not operate for profit.

Paragraph 4 of section 1 of article 7 of the Constitution of 1945 authorizes the General Assembly to exempt from taxation until December 31, 1961, all the real and personal property owned or held by Electric Membership Corporations organized under the act of 1937 (Ga. L. 1937, p. 644) for the purpose provided in said act. This exemption was granted by the General Assembly in 1946 by an amendment to the act of 1937 (Ga. L. 1946, pp. 12, 14). Section 3 of the act of 1937 provided that a membership corporation, co-operative and non-profit, could be organized for the purpose of engaging in rural electrification by furnishing electric energy, wiring facilities, electrical or plumbing equipment or services to any member. Section 4 of this act empowered the corporation to own, hold and maintain buildings, works, equipment or apparatus "convenient or useful."

The case of Elder v. Trustees of Atlanta University, 194 Ga. 716 (22 S. E. 2d 515, 143 A.L.R. 268), involved an effort on the part of the City of Atlanta to collect ad valorem taxes from the university on dwelling houses owned by it not on but near the campus, wherein teachers of the university resided, such occupancy being a part of their salaries. It was contended that these

properties were exempt from taxation by virtue of art. 7, sec. 2, par. 2 of the Constitution and an act of the legislature (Code, Ann., § 92-201) exempting "all buildings erected for or used as a college." The stipulated facts were: "That it is a part of the duty of the members of the faculty who occupy these residences to exercise supervision and control of the deportment of the students of the college; that this duty was facilitated by placing them near the student dormitories; that there were no facilities for housing the married members of the faculty in the dormitories; that proper housing facilities were not available nearer the campus; and that the residences of the faculty members are often used by the students for conferences with the faculty members." In holding that these dwelling houses were erected for college purposes and exempt from taxation, this court said: "It may be that a college could operate without a central heating plant, or without dormitories, or without a chapel building; but this would not prove that a central heating plant, or dormitories, or a chapel building, erected for and used by the authorities as a part of the equipment of the university, was not a part of the college and therefore subject to taxation. So with these dwelling houses. Some discretion must be given to the governing authorities of the institution to determine what buildings are necessary or proper to further their educational objectives."

We are of the opinion that the ruling in the *Elder* case, supra, on principle and by an analogy of the facts, controls the instant case and requires a reversal of the judgment of the trial court. From the undisputed facts in this case, the dominant consideration of the corporation in building and maintaining the dwelling house near its office to be occupied as a residence for its manager was to promote efficient and prompt service day and night to its members rather than merely to furnish a place of habitation for its employee, and should thereby be considered as being used by it in supplying rural electrification to its members. The duty of the manager in seeing that prompt and efficient service be accorded the members of the corporation in rural areas, so that they be given light and their labors lightened by the use of electric energy, is just as essential to the efficient operation of the corporation as having the residences of teachers of a college

near the students to facilitate their enlightenment.

The fact that the manager paid the corporation rent and the dwelling house was not located on the premises of its home office does not require a different result. The dwelling house was "convenient and useful" and is an essential part in carrying out the purposes of the corporation, viz., furnishing electrical energy to persons in rural areas.

The evidence not only authorized but demanded a verdict for the plaintiff that the property was exempt from taxation. It follows that the court erred in directing a verdict for the defendant and entering a judgment thereon.

*Judgment reversed. All the Justices concur.*