# Muhlenberg College Appeal

*Theodore R. Gardner, Jules Goldstein,* and *William S. Hudders,* for appellant.

*Robert H. Jordan* and *Bernard B. Naef,* for respondents.

LANSBERRY, P. J., (Sixteenth Judicial District, Specially Presiding), November 12, 1966.—This litigation presents four appeals by Muhlenberg College from the determination made by the City of Allentown and the County of Lehigh assessing for real estate tax purposes two parcels of land located on the college campus, owned by the college and upon which are erected two fraternity houses.

The appeals came on for full hearing by the court after which oral arguments were heard and written briefs submitted. Both the petitioner in the appeals, Muhlenberg College, and the respondents, the City of Allentown and the County of Lehigh, are in accord that the precise issue for determination is whether or not the fraternity houses as located "are necessary for the occupancy and enjoyment of the college".

The basic law is the Act of May 22, 1933, P. L. 853, sec. 204, as amended, 72 PS §5020-204, titled, The

General County Assessment Law, including the pertinent sections allowing certain exemptions.

The contentions of the parties are noted in their respective statements of the questions involved. Appellant, Muhlenberg College, poses the question as follows:

Whether the lands and buildings, owned in fee by Muhlenberg College and occupied by the Phi Kappa Tau and Phi Epsilon Pi Fraternities, are necessary for the occupancy and enjoyment of Muhlenberg College, a charitable organization, and, therefore, exempt from taxation by both the County of Lehigh and City of Allentown, Pa.

The college answers the question affirmatively. The respondent taxing bodies suggest the following as the more accurate statement of the question:

Whether a college which enters into an agreement with a social fraternity, permitting the fraternity to use land owned by the college exclusively for the purposes of the fraternity, is entitled to tax exemption of that land on the basis that the use of that land is necessary for the occupancy and enjoyment of the college.

Respondents answer the question in the negative.

For the reason that the four appeals involve the identical issue, one opinion will be sufficient.

From the testimony and documentary evidence entered in the record, we now make the following

### FINDINGS OF FACT

1. Muhlenberg College is a nonprofit corporation organized and existing under and by virtue of the laws of the Commonwealth of Pennsylvania and located in the City of Allentown, Lehigh County, Pa., and was, prior to and on April 21, 1958, and continues to be, an institution of learning and an accredited college, founded, endowed and maintained by public and private charity.

2. Muhlenberg College is now and was on April 21, 1958, the owner in fee of the premises known as 2310 and 2310 rear, Chew Street, City of Allentown, Lehigh County, Pa., which said premises are located on the college campus.

3. Eta Chapter of Phi Kappa Tau Fraternity is a nonprofit corporation organized and existing under and by virtue of the laws of the State of Ohio with its fraternity house located at premises 2310 Chew Street rear, Allentown, Pa., the purpose of the fraternity being stated in the preamble of its constitution as follows: "To instill the fundamentals of wholesome living and vigorous thinking, to provide energetic participation in all collegiate activities, social, athletic, forensic and particularly scholastic", and its primary purpose for having a fraternity house being to furnish living quarters for Muhlenberg College students who are members of that fraternity.

4. Alpha Nu Chapter of Phi Epsilon Pi Fraternity is a nonprofit corporation organized and existing by virtue of the laws of the State of New York with its fraternity house located at premises 2310 Chew Street, Allentown, Pa., its purposes being those of college fraternities generally and its primary purpose for having a fraternity house being to furnish living quarters for Muhlenberg College students who are members of the fraternity.

5. Beginning with the year 1957, Muhlenberg College lacked sufficient housing space for its students and was without sufficient capital funds to construct additional dormitory space for its students and because of these deficiencies some students were required to live off campus each subsequent year.

6. Under an agreement dated April 21, 1958, between Muhlenberg College and Phi Kappa Tau Home Association, the college made available certain sums of money from its endowment fund for the construc-

tion of the fraternity house at 2310 Chew Street rear, and, similarly, under an agreement dated March 18, 1960, between Muhlenberg College and Phi Epsilon Pi Fraternity, Inc., the college made available certain sums of money from its endowment fund for the construction of the fraternity house at 2310 Chew Street.

7. Except as to the specific sums of money involved and the second parties, the agreements mentioned in fact 6 are substantially identical and provided generally that the college was in need of dormitory space; that the fraternities' quarters were inadequate to meet their accepted responsibilities of housing their members; that it was the mutual desire of both parties to fulfill their several responsibilities in this area; that the college would make available without charge appropriate land for the new fraternity houses; that the fraternities be responsible for the planning and construction of the houses subject to the approval thereof by the college; that the fraternities have exclusive privilege of occupancy; that the fraternities furnish and maintain the properties; that provisions for driveways and maintenance thereof be included in the plans; that the fraternities deposit fixed sums of money from their own sources to be applied by the college together with sums provided by the college for the construction of the houses; that provisions for and terms of the repayment of the sums advanced by the college be included and that the fraternities pay any taxes which may be assessed against the lands and buildings so constructed.

8. The agreements mentioned in fact 6 and further described in fact 7 provide in each instance for the leasing of the fraternity houses to the fraternities for a period of 99 years, subject to a reversion clause and for extensions of the leasing arrangement as the then circumstances shall warrant and/or the parties mutually agree, and further provided for the payment

of interest and the repayment of the advanced construction costs out of fraternity rental income.

9. Both fraternity houses have been constructed and furnished in accordance with the agreements, plans and specifications approved by Muhlenberg College and under the supervision of the college superintendent of grounds and buildings.

10. On January 1, 1964, the premises owned by Muhlenberg College at 2310 Chew Street rear, Allentown, Pa., and upon which is constructed the Phi Kappa Tau Fraternity House was assessed by the City of Allentown and County of Lehigh for tax purposes as follows:

| City of Allentown | | County of Lehigh | |
|---|---|---|---|
| Land | $ 6,000 | Land | $ 2,970 |
| Building | 52,550 | Building | 22,420 |
| Total | $58,550 | Total | $25,390 |

11. On January 1, 1964, the premises owned by Muhlenberg College at 2310 Chew Street, Allentown, Pa., and upon which is constructed the Phi Epsilon Pi Fraternity House was assessed by the City of Allentown and County of Lehigh for tax purposes as follows:

| City of Allentown | | County of Lehigh | |
|---|---|---|---|
| Land | $ 5,010 | Land | $ 2,630 |
| Building | 33,950 | Building | 19,730 |
| Total | $38,960 | Total | $22,360 |

12. Following the assessment for tax purposes by the city and county, Muhlenberg College perfected its appeals as to both assessments to the respective city council and the County Board of Assessment and Revision of Taxes, as provided by law, and the City Council of the City of Allentown through its Board

of Assessment and Revision of Taxes by resolution dated January 19, 1965, and the County Board of Assessment and Revision of Taxes of Lehigh County by letter dated January 15, 1965, denied the appeals as to both property assessments.

13. It is the official policy of Muhlenberg College to recognize and encourage this type of college fraternal organizations and small living groups within the total framework and under the supervision of the college administration, and it is manifest that Eta Chapter of Phi Kappa Tau and Alpha Mu Chapter of Phi Epsilon Pi have made and continue to make positive contributions to the whole academic, administrative and cultural program and purpose of Muhlenberg College.

14. The fraternity houses herein concerned, like the dormitories on campus, provide areas for living quarters, dining facilities, recreational activities, as well as study room, and do relieve the immediate pressure on the college for additional, necessary dormitory and student union facilities.

15. Although all members of the fraternities here concerned must be properly enrolled students at Muhlenberg College and their admission into the fraternity dependent, in part, upon attaining certain scholastic standing and approval by the dean of studies of the college, and although the college retains the right to place and house nonmembers of the fraternities in these fraternity houses, no students other than members of the two fraternities have lived or currently live in these two fraternity houses.

16. Notwithstanding the numerous activities and areas of the fraternities and their fraternity houses to which faculty and administrative personnel, nonmember students and the public are invited to and do participate in and use on occasions, generally speaking the use of the houses and the facilities therein are for the members of the fraternities.

17. Under its promulgated rules and regulations, Muhlenberg College maintains its supervisory control and influence over the fraternity as well as the conduct of the members in the fraternity, the uses made of and the activities conducted within the fraternity houses; however, the college does, in reality, permit and allow each fraternity wide latitude in the control and operation of the house it occupies as well as the members who reside therein and the activities conducted in the houses.

18. Muhlenberg College is an institution of public and private charity.

19. All of the financial revenues of the college, including those paid over to the college by the fraternities, are used for and applied to the support of Muhlenberg College for increasing the efficiency and facilities thereof and the maintenance and improvement of the grounds and buildings.

### DISCUSSION

Article IX, sec. 1, of the Constitution of Pennsylvania, authorizes the General Assembly, by general laws to ". . . exempt from taxation public property used for public purposes, actual places of religious worship, places of burial not used or held for private or corporate profit, institutions of purely public charity and real and personal property owned, occupied, and used by any branch, post, or camp of honorably discharged soldiers, sailors and marines. . . ."

The phrase "institutions of purely public charity" as used in the constitutional provision and as interpreted by our appellate courts, requires that the institution must be entirely free from the private profit motive and, generally speaking, institutions of learning such as universities, colleges and academies have been held to be institutions of purely public charity within the constitutional provisions: Hill School Tax Exemption Case, 370 Pa. 21. There is no dispute that

Muhlenberg College is an institution of purely public charity in the constitutional purview.

Pursuant to the constitutional authority the legislature enacted the statute of 1933, P. L. 853, as amended 72 PS §5020-204, known as the General County Assessment Law, which provides, in part:

"The following property shall be exempt from all county, city, borough, town, township, road, poor and school tax, to-wit: . . . (c) All hospitals, universities, colleges, seminaries, academies, associations and institutions of learning, benevolence, or charity, including fire and rescue stations with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, founded, endowed and maintained by public or private charity; Provided, That the entire revenue derived by the same be applied to the support and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purpose".

This is one of the 12 categories of exemptions contained in the assessment act.

It is established in the record that the entire revenue received by Muhlenberg College is applied by the administration to the support and increase of the efficiency and the facilities of the college, including the necessary repairs and maintenance of the grounds and buildings and including the increase of grounds and buildings for the purposes of the institution and, hence, fulfills the statutory proviso.

The decisive issue in these appeals is whether or not the lands and buildings owned by Muhlenberg College and occupied by Phi Kappa Tau and Phi Epsilon Pi Fraternities are necessary for the occupancy and enjoyment of Muhlenberg College. The essence of the determination involves the construction and application of the word "necessary".

From the reported appellate court decisions we may now clearly ascertain the attributes and elements of that portion of the Pennsylvania tax exemption proviso which exempts colleges "with the grounds thereto annexed and *necessary* for the occupancy and enjoyment of the same. . . ." (Italics supplied.)

Certain elements and attributes of the necessity required to be present before the specific property may be within the exemption were determined to be basic in the following cases. In Lancaster Theological Seminary Tax Exemption Case, 207 Pa. Superior Ct. 12 (1965), Judge Hoffman said:

"Our courts have held that 'necessary' means not 'absolute necessity', but rather 'reasonable necessity', embracing the idea of convenience and usefulness for the purposes intended".

In University of Pittsburgh Tax Exemption Case, 407 Pa. 416 (1962), Mr. Justice Jones said:

"The real nub of this controversy is the use to which the residence of the chancellor is put. The burden was upon the university to establish the primacy of the use of this residence in furtherance of the general purposes of the university".

And in a footnote to this statement, Mr. Justice Jones pertinently quoted from Mullen v. Commissioners of Erie Co., 85 Pa. 288, the following:

". . . it is the use, not the building, which defines the exemption. But the use which is made of a place is a present fact, not something ideal or in contemplation merely". Again, in the University of Pittsburgh case, at page 422, quoting from the lower court opinion of Judge Beck, this attribute is noted:

". . .the dominant use of the Chancellor's official residence is that of an integral part of the larger educational functions and objectives of the University of Pittsburgh in accordance with policy determined by the trustees and executed by the Chancellor".

Judge Gawthrop in County of Lancaster v. Y.W.C.A. of Lancaster, 92 Pa. Superior Ct. 514 (1927), said:

"The word 'necessary' as used in the statute does not mean 'absolute necessity' but rather a 'reasonable necessity', 'convenient and useful' to the purposes of the charity".

And finally, from the opinion of Mr. Justice Kephart in Barnes Foundation v. Keely, 314 Pa. 112 (1934), in which case our Supreme Court considered the specific question, ". . . is this property necessary for the efficient discharge of the business of the charity. . . .", it was said: " 'Necessary for the efficient discharge' does not mean an absolute necessity, but a reasonable necessity, embracing the ideas of convenience and usefulness for the purposes intended".

Other authorities in similar vein may be found in the foregoing citations.

From the numerous Pennsylvania authorities, the requirement of necessity as written into the tax exemption proviso applicable to educational institutions is not an absolute necessity but consists of a necessity which embraces the elements and attributes of the current, dominant use to which the facility is put, the reasonableness of that use, and the convenience and usefulness of the facility in an efficient discharge of the larger educational functions and objectives of the institution as the same are determined by its governing authority. Such is the test and the burden is upon the educational institution to meet that test. The key words are the reasonable, dominant use of the facility and its convenience in the efficient discharge of the larger educational functions and objectives of the institution as those objectives and functions are determined and executed by the institution's governing authority.

Muhlenberg College is a well known, accredited, liberal arts college located in the City of Allentown,

Lehigh County, Pa., founded in 1848, with a current student body of approximately 1,600 students and a faculty of approximately 100 members. According to its president, Dr. Erling N. Jensen, its long-range projections do not anticipate becoming a large institution as some colleges are presently contemplating and planning, but prefers to accentuate the relationship between student and student and student and faculty. In accordance with this policy, fraternal organizations and small group living are encouraged and made subject to supervision by the college administration as part of its declared policy of continuing to remain essentially a small, residential college.

In further elucidation of this official policy and objective, Dr. Jensen stated:

"Within the last few years we have gone from a requirement of a five day board to a seven day board plan which holds the students on campus. We have done this because we believe that this will contribute not primarily socially, but it will contribute to the academic program of the college, and fraternities being part of the residential system of the college also contribute to this".

The primary or dominant use of the two fraternity houses at Muhlenberg College is that of housing resident students which is in important respects comparable to dormitory housing, particularly the suite arrangement in its newest dormitory. These fraternity houses are facilities which do accentuate and provide smaller group living units which is one of the objectives of the college in its emphasis upon resident students as contrasted to commuter students and its objective of student-to-student relationships. Clearly, the usefulness of these housing facilities is reasonable, and, equally clear, it appears the loan of the college's capital funds under the agreements is an efficient dis-

charge of the long-range academic and administrative objectives announced by its governing authority.

In support of the respondent city and county's contention that the Phi Kappa Tau and Phi Epsilon Pi Fraternity houses at Muhlenberg College should not be tax exempt, counsel urges (1) that the required strict construction of the tax exemption statute precludes these exemptions, and (2) that the necessity element in the tax exemption proviso is limited to the reasonableness of the use of the facility as that use is currently an integral part of the educational functions and objectives of the institution. The emphasis urged by respondents is on the word educational in construing the reasonableness of the use.

With specific reference to the doctrine of strict construction, the Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, sec. 58, subsec. 5, 46 PS §558, is cited and West View Borough Municipal Authority Tax Case, 175 Pa. Superior Ct. 641, referred to at page 644. It is undoubted that the party or person claiming an exemption from taxation has the burden of proving his right and must point to legislation allowing the exemption and bring his claim within that statute. It is correct to say that a tax exemption statute must be strictly construed. The rule of "strict construction" is not intended to, nor does it, require an application to a given situation to the extent that the construction of the statute must be so narrow, strained and restrictive as to exclude therefrom situations which are reasonably within the scope of the statute under review.

In view of the many specific circumstances and situations wherein the tax exemption provision of the act has been found operative in relation to educational institutions, we could not hold that the rule of strict construction is applicable to the instant circumstances or situation without doing violence to the prior adjud-

ications or the tax exemption statute itself. If dormitories on a college campus are within the scope of the tax exemption statute, and they clearly are, it becomes difficult to see why fraternity houses, which are primarily a form of dormitory, are not also within the scope of the exemption statute.

In Westview Borough Municipal Authority Tax Case, supra, the rule of strict construction was applicable only because the tenant house owned by the municipal authority and leased for the purpose of current revenue was not necessary for, and not applied to, the governmental function of the authority. In fact, the real estate there assessed was held by the authority for possible future expansion and use of the authority and was clearly beyond the right of exemption.

Respondents next urge the contention that the use to which the facility sought to be tax exempt, must be a facility used as "an integral part of the educational functions and objectives of the institution". The emphasis is on the word educational.

In this contention, reliance is placed upon the fourth clause of the agreements between the college and the fraternities. The Phi Kappa Tau agreement contains the following:

"Upon completion of said housing facilities Fraternity shall have the sole and exclusive privilege to use and occupy the same with the premises hereinbefore described for the purpose of providing housing and parking facilities for the members of Eta Chapter aforementioned and their activities and such other persons and/or activities as Fraternity and College may from time to time approve. . . ."

From this statement it is argued the use contemplated for this facility is in futuro so far as nonmembers of the fraternity are concerned since the present use is exclusively that of members. Moreover, the contention advanced implies that the providing of a

facility for social activities, parking space and as well residence quarters, is not a part of the educational function within the purview of a strict construction of the tax exemption statute.

The foregoing portion of clause four of the agreement, taken out of context, would be impressive standing alone if it declared the policy of the governing authority of Muhlenberg College. As heretofore noted, the initial "whereas" clause of the agreement expressed the need of the college for dormitory space wherein to house more of its student body and the third and fourth "whereas" clauses expressed the area of the fraternities' responsibilities and the mutual desire of both parties to meet their several responsibilities "thereby aiding college to solve the problem of housing its students and simultaneously providing Eta Chapter with adequate housing facilities", which we have noted is the policy at Muhlenberg in approaching its ideal of a campus resident student body as part of its educational objective and policy.

Moreover, the proposition as argued completely overlooks the "enlarged functions of the modern university or college" to which Mr. Justice Jones made eloquent reference in the University of Pittsburgh Tax Exemption Case, beginning at page 422. We may paraphrase what was there said with reference to the chancellor's residence and here say that a fraternity house at a modern, progressive, "college necessarily renders a real function, tangibly and intangibly, in the life of the institution. While its utility to the purposes and objectives of the institution is incapable of *exact* measurement and evaluation, it is nonetheless real and valuable".

Counsel for both parties have suggested that the precise question presented by these appeals has not been adjudicated in Pennsylvania. For this reason respondents' counsel suggested a careful consideration

of cases in other jurisdictions citing especially Cornell University v. Thorne, 57 N. Y. S. 2d 6 (1945) ; Cornell University v. Board of Assessors of the City of Ithaca, 260 N. Y. S. 2d 197 (1965) ; Knox College v. Board of Review, 308 Ill. 160, 139 N. E. 56 (1923), and the annotations in 35 ALR 1045 and 66 ALR 2d 904. Interesting and helpful as those cases and annotations are in the present consideration, they are not applicable for the reason that the statutory language and provisions for exemption are not akin to that of the Pennsylvania statute. In Cornell University v. Board of Assessors of the City of Ithaca, supra, relied upon by respondents, the statute in substance exempts real property of a corporation organized exclusively for educational purposes and used exclusively for carrying out thereon one or more of such purposes. Similarly, other cases construed statutes with an exclusive use provision which is not contained in the Pennsylvania statute and clearly distinguishes those cases from the instant appeals. The case of Alford v. Emory University, 216 Ga. 391, 116 S. E. 2d 596 (1960), involving fraternities at Emory University in Georgia, is interesting in that both the facts and the statute there concerned are more comparable to the instant facts and the Pennsylvania statute and in which case the court determined a fraternity house was exempt from taxation under the statute.

Based on the facts as found and the principles of law applicable we now enter the following

## CONCLUSIONS OF LAW

1. Muhlenberg College is a nonprofit corporation organized and existing under and by virtue of the laws of the Commonwealth of Pennsylvania and is a charity, founded, endowed and supported by public and private charity and is an institution of purely public charity under the Constitution of Pennsylvania.

594

2. The City of Allentown in Lehigh County, Pa., and the County of Lehigh in the Commonwealth of Pennsylvania, are lawfully constituted governmental entities with the authority to assess, levy and collect real estate taxes for their governmental functions.

3. All of the revenues of Muhlenberg College, including those paid to the College by Eta Chapter of Phi Kappa Tau Fraternity and Alpha Nu Chapter of Phi Epsilon Pi Fraternity, are used for and applied to the purpose and objectives of Muhlenberg College by way of increasing the efficiency and facilities thereof and the increase as well as the maintenance and improvement of the grounds, buildings and facilities of the college as required by the exemption proviso of the Pennsylvania County Assessment Law of 1933.

4. The burden of establishing the benefit of the Pennsylvania tax exemption feature is upon Muhlenberg College.

5. The rule or requirement of strict construction applicable to the Pennsylvania tax exemption provisions of the County Assessment Law does not preclude Muhlenberg College from the benefit of a tax exemption as to the Phi Kappa Tau and Phi Epsilon Pi Fraternity houses located and constructed upon the college campus on land owned by the college.

6. The use made by Muhlenberg College of two parcels of land owned by it and located on its campus designated 2310 and 2310 rear Chew Street, in the City of Allentown, Lehigh County, Pa., upon which are located two fraternity houses under long term leasing agreements to the fraternities is a reasonable use of the college owned land.

7. The use of the two parcels of land belonging to Muhlenberg College within the college campus and upon which are erected two fraternity houses is, inter alia, an efficient discharge of the larger educational functions and objectives of Muhlenberg College in ac-

cordance with its declared educational objectives and policies as a liberal arts college as enunciated and executed by its governing and executive authorities.

8. The Phi Kappa Tau and Phi Epsilon Pi Fraternities do form integral parts of the educational function and objectives of Muhlenberg College and are reasonably useful in the occupancy and enlargement of the college owned land.

9. The properties of Muhlenberg College situate at 2310 rear and 2310 Chew Street, City of Allentown, Lehigh County, Pa., and upon which are erected the Phi Kappa Tau Fraternity House and the Phi Epsilon Pi Fraternity House, are exempt from real estate taxation under the General County Assessment Law of 1933, P. L. 853.

10. The costs of these proceedings are assessable against the respondents, the City of Allentown and the County of Lehigh, in equal proportion.

For the reasons indicated in the opinion, and on the basis of the facts found and conclusions of law as stated, we now enter the following

### DECISIONS OF THE COURT

Now, November 12, 1966, upon extended consideration of the petitions of Muhlenberg College appealing from the action of the Boards of Revision of Taxes of the City of Allentown and the County of Lehigh of the Commonwealth of Pennsylvania, it is determined that the parcels of land owned by Muhlenberg College and the improvements thereon situate at 2310 rear and 2310 Chew Street, in the City of Allentown and County of Lehigh, upon which are erected the Phi Kappa Tau and Phi Epsilon Pi Fraternity Houses, are exempt from real estate taxes under the tax exemption provision of the General County Assessment Law of 1933 and, accordingly, the appeal of Muhlenberg College, entered to April term 1965, no. 299, being from the assessment by the City of Allentown

596

as to 2310 Chew Street rear, (Phi Kappa Tau House) and the similar appeal entered to April term 1965, no. 300, being from the assessment by the County of Lehigh as to 2310 Chew Street rear, (Phi Kappa Tau House) and the similar appeal entered to April term 1965, no. 301, being from the assessment by the City of Allentown as to 2310 Chew Street (Phi Epsilon Pi House), and the similar appeal entered to April term 1965, no. 302, being from the assessment by the County of Lehigh as to 2310 Chew Street (Phi Epsilon Pi House), are all sustained at the record costs of the City of Allentown and County of Lehigh.